The Chicago, R. I. & P. Ry. Co. v. Frank T. Kinnare, Adm'r, etc.

1. NEGLIGENCE—*Railroad Company Permitting Piles of Sand to Remain Beside its Tracks.*—The placing of piles of sand and gravel by a railroad company alongside of its track where an employe is required by his service to mount upon moving cars is negligence.

2. SAME—*Placing Piles of Sand and Gravel Alongside the Track.*

—The fact that a railroad company permits piles of sand and gravel to remain alongside of its track at a place where it sends a special policeman in its employ to arrest men trespassing upon trains and over which he stumbles and falls under the wheels of the cars and is killed while in the discharge of his duty in attempting to board a moving train for the purpose of making arrests, may reasonably be found by the jury to be negligence and the proximate cause of his death.

3. Contributory Negligence—*Attempting to get upon a Moving Train a Question for the Jury.*—Whether the attempt of a special policeman in the employ of a railroad company to get upon a moving train while in the discharge of his duty in endeavoring to arrest trespassers upon such train, is negligence, is a question of fact for the determination of the jury; and the fact that his companions made the same attempt under like circumstances indicates that the undertaking was not so apparently perilous as to make it one which no reasonable man would enter upon.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed October 29, 1900.

Statement.—This suit was brought by appellee as administrator of Anthony Burns, deceased, to recover damages for the death of said Burns, caused by negligence of appellant.

The declaration charges in effect that appellant was negligent, first, in ordering Burns, who was employed as a night watchman, into a different and more dangerous occupation, viz., to go out on the road as a special police officer to arrest persons riding unlawfully upon appellant's trains, and, second, in negligently permitting a pile of sand and gravel to be and remain alongside of its tracks in.such position as to be likely to trip a person attempting to get on or off a moving train.

Burns, who was thirty-one years of age, had worked for appellant for about four years immediately preceding his death. When he begun this service he was employed as a watchman at a railroad yard at Blue Island. His duties were to guard the company's property, to see that car seals were intact, and to prevent suspicious characters from remaining in the yard or about the cars. He was required to ride upon certain cars and stay with them until delivered

to connecting carriers.   In the performance of these duties, it was necessary for him frequently to get on and off the moving trains, and to ride upon the tops of freight cars. About a year prior to his death he was transferred to the freight yards of the company at Twelfth street, in the city of Chicago, and here he was employed as a night watchman, and here his duties were practically the same as they were before, but performed at night.   During all the time he was employed as watchman he was also a special police-man, clothed with the same authority to make arrests as are the regular city policemen.   He was duly sworn to the faithful performance of his duties by the city authorities, and, as indications of his position, wore a policeman's star and carried a revolver; the only difference was that he was paid by the railway company instead of by the city.   His duty was to guard and protect the property of the company wherever it might be situated, and to apprehend and take into custody violators of law in this regard wherever they might be found.

While Burns was working in his capacity of watchman at Blue Island, the railroad company, his employer, com-menced the elevation of its tracks near Twenty-second street, proceeding in a southerly direction with the work, and, at the time the accident occurred on which this suit is based, the tracks had been elevated as far south as Fifty-ninth street.   The elevation of appellant's tracks was done under the requirements of an ordinance of the city of Chicago.   The ordinance made it a misdemeanor, punish-able by fine or imprisonment, for any one to be upon the track elevation without right.  The appellant had frequently been compelled to send its watchman and its special agents out along the line of the road within the city limits, for the purpose of enforcing the provisions of the ordinance relative to trespassers.   There was no one employed especially for this purpose; but at times, when trespassers upon the ele-vated tracks and those stealing rides upon trains became particularly annoying, the special police or watchmen in the employ of the company, such as Burns, were called upon

to work for a time in arresting such offenders. Burns had been thus detailed for such work four or five times previous to the time in question. On June 14, 1897, Burns was detailed by Mr. Hubbell, superintendent of terminals of appellant, to go with a party to arrest trespassers upon cars on the elevated tracks. Nine persons in all were in the party thus detailed. They proceeded to Fifty-third street, in the city of Chicago, and there separated into two parties. Burns, with three others, went south upon the elevated tracks. One of the four was Shields, a special agent. They saw a freight train approaching upon which was a man who was stealing a ride. Burns asked, "Well, will we get him?" Shields replied, "Certainly we will get him." There was a pile of sand and gravel extending continuously alongside the track upon which the train was moving. The pile was a foot or more in height and extended from a point north of Fifty-seventh street, where the injury occurred, to the end of the track elevation. There was evidence tending to show that directly opposite the point where Burns and the others stood, the sand and gravel were leveled to grade, and that the pile commenced some fifteen feet south of this point, and from there extended along the track in the direction in which the train was moving.

When Burns, with the others, was attempting to get upon the moving freight train, he stumbled upon the pile of sand and gravel, fell under the wheels of one of the cars, and was so injured that he died. The work of bringing the track to the required grade was in progress at the time. The work had commenced in the spring, at the northerly end of that part of the work which had been partly raised during the previous autumn, until winter checked its progress, and was progressing south to the end of the elevation, which at that time was at Fifty-ninth street. The sand and gravel was hauled to the places where it was needed by cars, and was shoveled off the cars onto the ground by the side of the track under which it was to be tamped. As soon as it was shoveled off the cars the workmen leveled it by shoveling it off the track so that it would not impede

the wheels of passing trains and would not strike car steps
or other parts of cars, so that it sloped away from the tracks,
leaving room for the operation of trains.   Then the section
men followed and gradually raised the track by tamping
the sand and gravel under the ties.   The track foreman of
appellant testified :

"We followed up the gravel train; rounded the gravel
off, and we aim to go right in and raise these tracks up and
put the gravel in together.   It was thought necessary to
smooth off the gravel for the use of the tracks.   *   *   *
I suppose a man can level off a car load in fifteen or twenty
minutes, and, 'it is a simple job to level it off after the
train throws it down there.' "

The pile of sand and gravel had remained at this place
for at least four or five days without being leveled off, at
the time of the injury, which was upon the 14th of June,
1897.

The issues were submitted to a jury and a verdict for
appellee was returned, upon which the judgment appealed
from was entered.

W. W. Ross and W. T. RANKIN, attorneys for appellant;
ROBERT MATHER, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The only questions presented upon this appeal are as to
the sufficiency of the evidence to sustain the verdict, and
the modification of the ninth and twelfth instructions ten-
dered by counsel for appellant.

We are of opinion that the evidence as to negligence of
appellant operating as proximate cause of the injury was
such as would warrant the general verdict for appellee.   It
may be conceded that the evidence of negligence in chang-
ing the employment of Burns from the occupation of night
watchman to that of special police officer is insufficient to
sustain the verdict, but it nevertheless is true that the evi-
dence is such that negligence of appellant in permitting the
pile of sand and gravel to remain alongside the track where

Burns was sent to arrest men upon moving trains, might be reasonably found by the jury to have been the proximate cause of the death. N. C. St. R. R. Co. v. Dudgeon, 83 Ill. App. 528; N C. St. R. R. Co. v. Dudgeon, 184 Ill. 477.

The negligence in the case cited consisted in placing piles of stones alongside of the track upon which the employe was required by his service to change from one to another of the employer's trains. The negligence in the case here consists in placing piles of sand and gravel alongside of the track upon which the employe was required by his service to mount upon a moving car. We perceive no difference in principle. Nor can it be held, as matter of law, that the attempt to get upon the car was of itself contributory negligence upon the part of Burns. That was a question for the jury. The fact that his companions made the same attempt, under like circumstances, indicates that the undertaking was not so apparently perilous as to make it one which no reasonable man would enter upon.

The 9th and 12th instructions as modified and given are as follows:

9th. "The court instructs the jury that even although you may believe from the evidence that the plaintiff's intestate, Anthony Burns, was not employed to do the work he was engaged in at the time of his injury, yet if the jury further believe from the evidence that he was engaged in said work without objection, and that the risks and dangers thereof, if it had any, were open and plain to his sight and understanding, then he occupies in this case the same position he would have occupied if he had been originally employed to do this work; and if he was injured while so employed by reason of such open and plain risk, his injury was the result of risks which were assumed by him, and plaintiff is not entitled to recover in this action, and your verdict should be in favor of the defendant."

12th. "The court instructs you that if a servant of full age and ordinary intelligence, upon being required by his employer to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same knowing and understanding their dangerous character, he assumes the risk of the new duties, which are equally open and apparent to him as to his employer."

The only modification in either instruction consisted in the insertion by the court of the words " and understanding " in each. This modification is complained of as error. We are of opinion that the modification did not impose any limitation upon the instruction which made it erroneous.

Nor can it be said, as a matter of law, that the hazard which led to the injury was a risk assumed by the employe. Although the evidence is that upon several other occasions Burns had done like work, and without protest, and if it could not be said that the mere fact of changing his employment from night watchman to special police officer was of itself negligence, yet it might well be found from the evidence that his service as an officer was not such as to bring him ordinarily into the place where this injury occurred, and thus to make the hazard arising from the pile of sand and gravel left near the tracks an ordinary risk of his employment. This, too, was a question of fact properly submitted to the jury.

We are of opinion that upon all the evidence the recovery must be sustained. The judgment is affirmed.